UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SUSAN J. CURRAN AND <br> HUGH CURRAN, <br>       Plaintiffs <br><br> v. <br><br> THOMAS M. RICHARDSON, <br>       Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No. 06-23-B-K <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF DECISION[1]

Thomas Richardson moves for summary judgment as to Counts II and IV of Susan and Hugh Curran's complaint (Docket No. 20). The Currans have sued Richardson in connection with injuries arising from a motor vehicle accident occurring on July 17, 2004, in Blue Hill, Maine. Count II of the complaint is an independent claim for negligent infliction of emotional distress and Count IV is a claim for punitive damages. I now grant the motion as to Count II and Count IV.

### Summary Judgment Standard

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required." Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002). A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. of N.H., Inc. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

## Summary Judgment Facts

Thomas Richardson has admitted liability for the accident giving rise to this lawsuit. The Currans' complaint seeks to recover damages caused by the accident, including physical injuries and emotional distress suffered by Susan Curran and Hugh Curran's loss of consortium.

There is no dispute that Richardson was traveling on the wrong side of the road at the time of the accident. The accident occurred at approximately 5:20 PM on July 17, 2004, on the East Blue Hill Road, in Blue Hill, Maine. At the scene Richardson acknowledged to the investigating officer that he had been driving on the wrong side of the road. He told the investigating officer that he had recently, for "several months" as reported by Deputy Kane, been in a place (Bermuda) where they drive on the left side of the road, and never gave it any thought until he saw the oncoming car. Richardson was

very familiar with East Blue Hill Road, or Route 176, having successfully driven on it at least fifty times before he drove on the wrong side of the road and collided with Ms. Curran. He had driven on the East Blue Hill Road from a residence of Henry Becton -- the owner of a sail boat on which Richardson was a crew member -- to a yacht club, as he was doing when he collided with Ms. Curran, several dozen times. Indeed the morning of the collision Richardson successfully drove on the East Blue Hill Road, past the site where he later collided with Ms. Curran, without incident. Richardson had been driving in Maine for twelve days since his return from Bermuda.

In June 2004, Richardson spent approximately nine days in Bermuda visiting his parents and assisting the race committee for the Bermuda-Newport Race. While in Bermuda, he took driving lessons to obtain a Bermuda driver's license, obtaining his Bermuda driver's license on June 23, 2004. After obtaining his license, Richardson drove his parents' car in Bermuda on a few instances. Richardson also operated a rented motor scooter in Bermuda, which did not require a license. He has been driving in the United States with a driver's license for over ten years.

On the day of the accident, Richardson had been a crew member on a sailboat owned by Henry Becton that was participating in a race. Richardson ate breakfast that morning and the first thing he remembers consuming after breakfast is a sandwich sometime between 2:00 p.m. and 4:00 p.m. After eating the sandwich Richardson consumed the first of two beers he says he drank that afternoon. His second beer may have been consumed within one hour prior to the accident, as late as 4:30 p.m., and he ate chips while drinking that beer. Approximately twelve to twenty-four beers were brought onto the sailboat for a crew of between five to seven people. Rum or wine may also have

been on board the boat.[2]  Richardson agrees with the proposition that he is generally more affected by alcohol if it is consumed on an empty stomach.

Just prior to the accident, Richardson left the Becton residence to drive to the Kollegewidgwok Yacht Club for a post-race tea.  Upon exiting the Becton driveway, Richardson turned left onto the East Blue Hill Road and proceeded to travel west in the east-bound lane.  Richardson says he did not realize he was traveling on the wrong side of the road until he saw the Currans' car approaching in the same lane after he was approximately one-third[3] of a mile from the Becton driveway.  The parties' vehicles collided almost head-on in the east-bound lane.  Richardson approximates that he was driving between forty and forty-five miles per hour and accelerating at the time of the accident.

At the scene, Richardson was questioned by two Hancock County Deputy Sheriffs.  Deputy Sheriff Scott Kane questioned Richardson after Kane arrived at the scene and again in his cruiser.  The deputy sheriffs did not administer field sobriety testing because they observed nothing that led them to suspect that Richardson was under the influence of alcohol.  At the scene of the accident Deputy Kane issued Richardson a summons for driving to endanger, See 29-A M.R.S.A. 2413(1), and he was subsequently convicted on the charge on a plea of *nolo contedere.*

Richardson's "record" consists of a conviction for possession of alcohol by a minor and the driving to endanger conviction.  There was also an incident involving a college party and a keg of beer which resulted in a disciplinary proceeding while

---

[2]  Richardson denies the statement but gives no record citation.  The record citation given by the Currans states the boat was a private yacht and there may have been other spirits aboard for Becton's personal use, but they were not visible nor consumed on the day of the race.

[3]  Richardson denies this distance and says the driveway is less than .2 mile from the accident scene, but again he provides no record citation for that denial.  (Def.'s Resp. SAMF ¶ 70).

4

Richardson was in college in Connecticut in 2000. The disciplinary infraction involved bringing an "unregistered" keg of beer to the party. Richardson also admits that while he was in Bermuda he would go out to bars most evenings and drink between three and five drinks each evening.

After the accident Richardson called home to his family. He did not actively assist Curran at the scene of the accident, although an ambulance and law enforcement were promptly notified of the collision and arrived fairly quickly. Richardson obtained the advice of an attorney the following day. One month after the accident Richardson sent Susan Curran a letter extending his "sympathy and heartfelt prayers." The Currans offer this fact because the letter contains no "direct apology."

## Discussion

The foregoing facts do not support an independent claim for negligent infliction of emotional distress nor do they suffice to support an award of punitive damages.

### A. Negligent Infliction of Emotional Distress (NIED)

Maine law has long recognized that a plaintiff may recover for emotional harm, including emotional distress, mental anguish, and loss of the enjoyment of life as part of the recovery in a negligence action. Curtis v. Porter, 2001 ME 158, ¶ 19, 784 A.2d at 26. The Maine Law Court has explained that when the separate tort allows a plaintiff to recover emotional suffering, "the claim for negligent infliction of emotional distress is usually subsumed in the any award entered on the separate tort." Id. Richardson does not disagree with these general principles. Indeed, citing Rippett v. Bemis, 672 A.2d 82, 87 (Me. 1996)(affirming the grant of summary judgment on the separate NIED claim when emotional distress damages were recoverable on the underlying defamation tort), he

5

urges that I apply those principles and grant the motion for partial summary judgment.

At this juncture it is not clear to me what the Currans seek to gain with this separate count, except for the added burden of proving the severe nature of the emotional distress Susan has suffered, and perhaps some sort of pleading advantage that would promote a double recovery for emotional distress damages. See Curtis v. Porter, 2001 ME 158, ¶ 20, 784 A.2d at 26 ("Moreover, a negligent infliction claim requires proof of severe emotional distress, an element of damages that is not ordinarily required when the separate tort (except intentional infliction of emotional distress) provides for recovery for emotional damages."). As the trial judge in this case I am certain the jury instructions and verdict form will follow a pattern that will insure there is no double recovery for emotional distress damages. I also have no intention of segregating emotional distress damages from the other recoverable damages in this negligence action even if this count were still viable, as I know of no negligence case in Maine state courts that has taken that approach to a damage award of this nature even if the plaintiff has pled the separate count. Curran does not cite any such case. I take the Maine Law Court at its word and conclude that the emotional distress damages are subsumed in the separate tort of negligence.

That being said, as a matter of law I see no reason not to grant summary judgment on the separate count of negligent infliction of emotional distress. The same evidence would be admissible at trial whether Curran claimed emotional distress arising from Richardson's negligence or severe emotional distress arising under the negligent infliction of emotional distress count. The only summary judgment "fact" I know at this juncture relevant to this inquiry is that Susan claims to suffer from post-traumatic stress disorder

as a result of this accident. I do agree that post-traumatic stress disorder might be considered severe emotional distress by a factfinder. A plaintiff need not prove emotional distress of such severity in order to recover for emotional damages in a negligence action, but by granting judgment to the defendant on this count I do not intend in any way to limit Susan's proof on the issue of her emotional distress damages. As a matter of law those damages, whatever they may be, are simply subsumed into the negligence tort.

**B.  Punitive Damages**

Tuttle v. Raymond, 494 A.2d 1353 (Me. 1985) establishes that under Maine law a plaintiff seeking punitive damages must prove by clear and convincing evidence that the defendant acted with malice. To prove malice a plaintiff must show that the defendant's conduct was motivated by ill will toward her or that defendant's deliberate conduct was so outrageous that malice toward a person injured can be implied. Id. at 1361. Implied malice requires more than mere reckless disregard of the circumstances. Id. at 1362. In Tuttle, the Law Court denied a claim for punitive damages where a driver sped through city streets, ran a stoplight, and struck the plaintiff's vehicle with enough force to shear it in half.

Susan Curran builds her claim for punitive damages in this case on three legs. She claims she is entitled to punitive damages because: "Defendant. . . [1] drove at excessive speed on the wrong side of the road after drinking, [2] failed to call for emergency assistance for his seriously injured victim, and [3] concocted a wholly misleading explanation of the accident for law enforcement ." (Pl.'s Opp'n Mem. at 4-5.) The first leg, defendant's operation of the vehicle at a speed of approximately forty-five

miles per hour on the wrong side of the road after drinking two beers does not rise to the level of deliberate conduct contemplated by Tuttle. Although such conduct may amount to extremely reckless disregard of the circumstances, there is simply no credible evidence Richardson clearly set out to deliberately place either himself and/or others in harm's way, a key piece of evidence in proving deliberate conduct on his part based upon the circumstances of this collision.

In Filanowski v. Leonard, No. CV-02-183, 2003 WL 21958197, 2003 Me.Super. LEXIS 165 (Me. Super. July 8, 2003), one of the punitive damages cases relied upon by Curran, the defendant, who was ultimately convicted of operating under the influence, had a lengthy record of prior traffic violations and injured a passenger in his own vehicle who had, along with other passengers, warned him to slow down. Those facts certainly could support a finding of deliberate conduct on the part of the defendant. In the present case there is no evidence Richardson was alerted to the fact he was on the wrong side of the road until it was too late. Although he admitted he was indeed on the wrong side of the road at the time, there is no record evidence from which a factfinder can draw an inference that this wayward operation was deliberate in the Tuttle meaning of that word. Nor is there any evidence that Richardson deliberately drank until he was too intoxicated to drive. In fact, the evidence is that the police officers on the scene had no reason to believe Richardson was even under the influence of intoxicating liquors.

Nor is this case like Lehouillier v. East Coast Steel, Inc., 13 F. Supp. 2d 109, 111 (D. Me. 1998), in which the defendant's vehicle was loaded in such a way as to create a dangerous highway condition at night. That conduct could be construed as deliberate and in violation of a permit to haul the equipment. The deliberate nature of the Lehouillier

8

conduct could also be inferred from the fact that the obstruction did not endanger the operator of the vehicle, only others who might be traveling in close proximity to it.

The second leg of Curran's punitive damages claim rests upon the post-accident conduct of failing to call for assistance. In my view, viewing the evidence in the light most favorable to Curran and assuming that Richardson failed to call 911, I fail to see how under the circumstances of this case that fact could give rise to a finding of implied malice. It is undisputed that the State Police received a 911 call regarding the accident at 5:30 p.m. and that the accident occurred sometime between 5:20 and the time of that call. There is no evidence to suggest Richardson's "failure" to call 911 was somehow outrageous in these circumstances. He did not attempt to flee the scene, nor did he prevent or delay or hinder Susan Curran from obtaining as prompt medical attention as could be expected on a rural Maine highway. In the confused minutes following an accident of this magnitude, the factual dispute over who placed a 911 call should not be the basis of a punitive damages award.

Finally, Curran points to Richardson's "concocted" story about why he was driving on the wrong side of the road, the third leg of her claim. While Richardson may have been grasping at straws when he offered his explanation, this does not change the circumstances of the collision. And there is no dispute that he had recently been in Bermuda and had obtained a Bermuda driver's license. Even if Richardson embellished the length of his stay when talking with the officer, it is impossible for a factfinder to infer the existence of malice toward Curran or any other person based on Richardson's explanation of why he was driving on the wrong side of the road.

## Conclusion

Based upon the foregoing, I **GRANT** the motion (Docket No. 20) for partial summary judgment as to Counts II and IV.

*So Ordered.*

September 14, 2006

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge